UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

ASNACO, LLC,                                        Case No. 3:11-bk-01907-JAF
                                                    Chapter 11

        Debtor.

_____/

### BRANCH BANKING AND TRUST COMPANY'S
### MOTION TO DISMISS CASE FOR BAD FAITH

**BRANCH BANKING AND TRUST COMPANY ("BB&T")**, by and through its undersigned counsel, pursuant to 11 U.S.C. § 1112(b)(1), and Rule 9014, F.R.B.P., moves to dismiss this chapter 11 case as a bad faith filing, and states:

### BACKGROUND

1.      Debtor owns the real property located in Flagler County, Florida described in the attached **Exhibit A** (the "Property"). The Property consists of a four building commercial condominium project. BB&T has a mortgage on the Property. Pursuant to Paragraph 7 of the mortgage, BB&T also has a security interest in all rents, profits, revenues, or other income generated from the Property (the "Rents"). A true and authentic copy of the mortgage is attached hereto as **Exhibit B**. The mortgage was modified pursuant to a notice of future advance. The notice of future advance is attached hereto as **Exhibit C**. The mortgage, as modified by the notice of future advance, shall hereinafter be referred to as the "Mortgage."

2.      On or about March 19, 2009, as a result of Debtor's default under the Loan, BB&T's predecessor, Colonial Bank, filed a complaint in Flagler County, Florida styled *Colonial Bank vs. Asnaco, LLC, et. al.,* Case No. 2009-CA-000783 (the "Lawsuit"), seeking to foreclose the Mortgage.

3.     Colonial Bank subsequently went into receivership with the F.D.I.C. BB&T then purchased the Loan from the F.D.I.C. and, therefore, is the current owner and holder of the Loan.

4.     On May 25, 2010, the state court entered an order in the Lawsuit in favor of BB&T directing Debtor to deposit the net Rents into the registry of the court. A true and authentic copy of the May 25, 2010 order is attached to this Motion as **Exhibit D**. The May 25, 2010 order was subsequently modified on July 20, 2010, pursuant to an Agreed Order Clarifying Order Requiring Defendant to Deposit Collected Rents into the Court Registry. A true and authentic copy of the Agreed Order Clarifying Order Requiring Defendant to Deposit Collected Rents into the Court Registry is attached hereto as **Exhibit E**. The May 25, 2010 order, as modified by the Agreed Order Clarifying Order Requiring Defendant to Deposit Collected Rents into the Court Registry, shall hereinafter be referred to as the "Rents Order."

5.     On October 5, 2010, the Flagler County Circuit Court entered a Final Summary Judgment of Foreclosure (the "Foreclosure Judgment") in favor of BB&T and against Debtor. A true and authentic copy of the Foreclosure Judgment is attached to this Motion as **Exhibit F**. As set forth in the Foreclosure Judgment, the state court determined that BB&T was owed $12,934,195.98, plus interest at 6% per annum. The Foreclosure Judgment further provided that if this sum was not paid, the Property would be sold by judicial sale. The foreclosure sale date set forth in the Foreclosure Judgment was rescheduled for March 21, 2011, pursuant to an Agreed Order Resetting Foreclosure Sale. A true and authentic copy of the Agreed Order Resetting Foreclosure Sale is attached hereto as **Exhibit G**.

6.     Following the entry of the Foreclosure Judgment, Debtor timely filed a Motion for Rehearing and Clarification in the Lawsuit; however, the state court denied that motion.

7.     On December 17, 2010, Debtor filed a Notice of Appeal of the Foreclosure

Judgment. Nearly two months later, on February 11, 2011, Debtor filed a Motion for the Stay of

Execution in the Lawsuit. However, on March 11, 2011, the state court orally ruled against

Debtor and denied Debtor's Motion for the Stay of Execution.[1]

8.     On March 20, 2011 (the "Petition Date"), the day before the foreclosure sale of

the Property was scheduled to occur, Debtor filed the instant Chapter 11 bankruptcy case.

## GROUNDS FOR DISMISSAL

9.     Pursuant to Section 1112(b)(1), this chapter 11 case should be dismissed as a bad

faith filing. In the Eleventh Circuit, courts review the *Piccadilly* factors in analyzing whether a

chapter 11 case was filed in bad faith. *In re: Phoenix Piccadilly*, Ltd., 849 F. 2d 1393 (11th Cir.

1988). The Eleventh Circuit has ruled that the *Piccadilly* factors apply to single asset real estate

cases. *State Street House, Inc. v. New York State Urban Dev. Corp. (In re. State Street Houses

Inc.)*, 356 F.3d 1345 (11th Cir. 2004). Under *Piccadilly*, the court considers the following non-

exhaustive list of factors to determine whether a case was filed in bad faith:  (1) the debtor has

only one asset, the property at issue; (2) the debtor has few unsecured creditors whose claims are

relatively small compared to the claims of the secured creditors; (3) the debtor has few

employees; (4) the property is subject to a foreclosure action as a result of arrearages on the debt;

(5) the debtor's financial problems essentially are a dispute between the debtor and the secured

creditors which can be resolved in the pending state court action; and (6) the timing of the

debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's

secured creditors to enforce their rights. *See also In re: Canbec Investment Corp.*, 349 B.R. 915

(Bankr. M.D. Fla. 2006) (Chapter 11 bankruptcy case dismissed for lack of good faith where the

---

[1] The written order denying the Motion for the Stay of Execution has not yet been signed
by the state court.

debtor's only two assets were encumbered by mortgages held by the movant secured creditor; the debtor had no income, employees, or unsecured debts; the mortgaged properties were the subject of foreclosure proceedings; and the debtor's financial problems were no more than a dispute between it and the secured creditor).

10. Here, each of the *Piccadilly* factors demonstrates that Debtor filed this case in bad faith. First, the Debtor's primary asset is the Property which, as set forth above, is encumbered by the BB&T Mortgage and is the subject of the Foreclosure Judgment. Although Debtor lists $86,137.78 worth of personal property in Schedule B, $61,342.87 of that figure consists of Rents deposited into the state court registry pursuant to the Rents Order. As set forth above, BB&T has a security interest in the Rents, and the Foreclosure Judgment establishes that BB&T is entitled to the Rents currently held in the state court registry. After deducting the Rents, the value of Debtor's personal property is nominal at best. Additionally, Debtor lists a number of commercial leases in Schedule G; however, all of the leases are related to the operation of the Property, and, as set forth above, the Rents collected from the leases are subject to BB&T's security interest. Second, Debtor's unsecured claims are small relative to BB&T's secured claim. The unsecured claims listed in Schedule F predominantly consist of lease security deposits, all of which are related to the Property. Third, on information and belief, Debtor has only one employee, Bhagwan Asnani, who runs Debtor's operations. Fourth, the Property is subject to BB&T's Foreclosure Judgment. Fifth, Debtor's financial problems are essentially a dispute with BB&T regarding the foreclosure action. It is clear that the dispute can be resolved in the state court action as the state court has, in fact, already resolved the dispute pursuant to the Foreclosure Judgment and its subsequent rulings in connection with Debtor's attempts to reverse and stay execution of same. Finally, the timing of Debtor's bankruptcy filing evidences an intent

to delay or frustrate the legitimate efforts of BB&T to enforce its rights as this case was filed on the eve of the foreclosure sale and after the state court had already denied Debtor's motion to stay the foreclosure sale pending the outcome of Debtor's appeal of the Foreclosure Judgment. Accordingly, all of the *Piccadilly* factors are present in this case.

11. Debtor's lack of good faith is further demonstrated by the complete lack of a realistic chance of an effective reorganization in this case. The possibility of effective reorganization requires evidence of more than just a conceivable "possibility of reorganization." *In re: Annicott Excellence, LLC,* 258 B.R. 278 (Bankr. M.D. Fla. 2001) (citing *United Savings Ass'n v. Timbers of Inwood Forest Associates Ltd.,* 484 U.S. 365 (1988)). Rather, there must be evidence that an effective reorganization is reasonably possible within a reasonable time. *Id.* The facts in this case establish that an effective reorganization is not a possibility in this case. According to Debtor's Statement of Financial Affairs, Debtor's gross income in 2010 was $596,902.66. Based on Debtor's 2011 year-to-date gross income, Debtor's projected gross income for 2011 is $540,844.79. Using the statutory interest rate of six percent (6%), the annual interest on BB&T's claim will be at least $670,800.00 per year, or $55,900.00 per month. Debtor's gross income is insufficient to even pay interest BB&T's claim, much less any principal, real estate taxes, property insurance, operating expenses, or other creditors.

12. Furthermore, it is clear from Debtor's Schedules, as well as accountings filed by Debtor in the Lawsuit, that Debtor is barely able to cover its day-to-day operating expenses, much less payments to its creditors through a reorganization plan. According to Schedule B, as of the Petition Date, Debtor had only $6,846.99 in its bank accounts with which to carry out its operations. From July 2010 to March 2011, in compliance with the Rents Order, Debtor filed accountings in the Lawsuit itemizing its monthly expenses. The most recently filed accounting

reflects that Debtor suffered a net loss in February 2011 of $1,121.59. True and authentic copies of all accountings filed in the Lawsuit by Debtor are attached to this Motion as **Composite Exhibit H**. Debtor's lack of cash and negative earnings demonstrate that Debtor does not have the ability to fund a confirmable reorganization plan.

13.     It should also be noted that Debtor's schedules are not completely truthful. For example, in Debtor's Statement of Financial Affairs, Debtor indicates that it has not made any payments to creditors within the ninety day period immediately preceding the Petition Date; however, the accountings filed by Debtor in the Lawsuit demonstrate that that is untrue. In January 2011 alone, Debtor listed expenses it had paid totaling $52,673.76. *See* accountings attached hereto as **Composite Exhibit H**. Thus, Debtor's schedules are clearly inaccurate and further demonstrate Debtor's lack of good faith in filing its bankruptcy petition.

14.     Finally, the filing of this bankruptcy case after the state court's denial of Debtor's Motion for the Stay of Execution and just prior to the scheduled foreclosure sale demonstrates that Debtor filed this case in an attempt to acquire an automatic stay in lieu of posting a supersedeas bond. Courts have held that a bankruptcy case filed solely to acquire an automatic stay to stay a judgment pending the outcome of an appeal, without being required to post a bond, may be an indication of bad faith. *See In re. Sydnor*, 431 B.R. 584, 596 (Bankr. D. Md. 2010). In most reported decisions finding that the bankruptcy case was filed in bad faith, such finding was based primarily on a finding that the bankruptcy filing was motivated by a two-party dispute. *Id.* The *Sydnor* court stated,

> "That there exists an appropriate and available state forum for resolution of the dispute between the parties, the filer has invoked the automatic stay through a bankruptcy petition solely to acquire the benefit of a stay to avoid a requirement of posting a bond for a similar stay in the state action, the debtor's financial difficulty and whether there is no on-going financial activity or prospect of financial reorganization through a plan, are all considered relevant factors be

included by the court in examining the totality of circumstances on the question of filing for an improper purpose." *Id.*

In this case, all of the *Sydnor* factors are present. First, it is clear that the state court forum is appropriate and available for resolution of the dispute between Debtor and BB&T. Although Debtor may be unsatisfied with the results, all of the disputed issues have, in fact, already been resolved by the state court. Second, based on the state court's denial of Debtor's Motion for the Stay of Execution and the imminent foreclosure sale, it is clear that Debtor invoked the automatic stay solely to acquire the benefit of a stay in the Lawsuit without posting the requisite bond. Finally, as set forth above, Debtor's financial condition demonstrates that there is no prospect of financial reorganization in this case.

15. For the foregoing reasons, this case should be dismissed as a bad faith filing pursuant to §1112(b)(1).

WHEREFORE, BB&T requests that this Court dismiss the case as a bad faith filing.

/s/ Jennifer L. Morando
Jason A. Rosenthal
Florida Bar No. 0009482
Jennifer L. Morando
Florida Bar No. 0059363
The Rosenthal Law Firm, P.A.
4798 New Broad Street, Suite 310
Orlando, Florida 32814
Telephone: (407) 488-1220
Facsimile: (407) 488-1228
Attorneys for Movant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed by CM/ECF on March 24, 2011, and that an electronic copy will be furnished to **Debtor's Attorney**, Walter J. Snell, Snell & Snell, P.A., 436 N. Peninsula Drive, Daytona Beach, FL 32118, and **Trustee,** United States Trustee – JAX 11, 135 W. Central Blvd., Suite 620, Orlando, FL 32801, and a copy by U.S. Mail will be furnished to **Debtor,** Asnaco, LLC, 160 Cypress Point Parkway, Suite C-217, Palm Coast, FL 32164, and the creditors on the attached mailing matrix.

/s/ Jennifer L. Morando
Jennifer L. Morando