UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:  CASE NO.: 3:11-bk-01907-JAF

ASNACO, LLC,  Chapter 11

    Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon Motion to Dismiss Case For Bad Faith, filed by Branch Banking and Trust Company ("BB&T") on March 24, 2011 (Doc. No. 11). On April 21, 2011, the Court held a hearing on the Motion and elected to take the matter under advisement. Based upon the evidence presented and applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Asnaco, LLC ("Debtor"), is a Florida limited liability corporation owned and operated by Bhagwan Asnani. Mr. Asnani is Debtor's manager and sole employee. Debtor's sole asset is a four building commercial condominium development in Palm Coast, Florida (the "Property").

On November 5, 2004, Debtor executed a Promissory Note in favor of Colonial Bank, N.A., predecessor-in-interest to BB&T, for $7,500,000, plus 6% interest per annum. As security for the loan, Debtor granted Colonial Bank a security interest in the Property, as well as all rents, royalties, issues, profits, revenues, income, and other benefits generated from the Property. On November 9, 2004, Colonial Bank perfected its security interest on the Property by filing a mortgage in Flagler County, Florida. Several years later, on January 3, 2007, the mortgage was modified pursuant to a Notice of Future Advance and consolidated with a second Promissory Note in the amount of $3,000,000.

1

Debtor eventually defaulted on its loan obligations, and on March 19, 2009, Colonial Bank commenced foreclosure proceedings against Debtor in the Seventh Judicial Circuit Court in and for Flagler County (Colonial Bank v. Asnaco, LLC, et. al., Case No. 2009-CA-000783). Colonial Bank subsequently went into receivership with the F.D.I.C. and BB&T purchased Debtor's loan from the F.D.I.C.

On October 5, 2010, the state court entered a Final Summary Judgment of Foreclosure in favor of BB&T. The state court determined that Debtor owed BB&T $12,934,195.98, and if the sum was not satisfied in full, the Property would be sold by judicial sale on December 20, 2010. Following entry of the foreclosure judgment, Debtor filed a Motion for Rehearing and Clarification, which the state court denied.

On December 17, 2010, Debtor appealed the foreclosure judgment, after which the state court reset the foreclosure sale for March 21, 2011. On February 11, 2011, Debtor filed a Motion for Stay of Execution, which was orally denied by the state court on March 11, 2011. On March 20, 2011, Debtor filed a voluntary petition for Chapter 11 bankruptcy protection, preventing execution of the foreclosure sale the next day. As of the date of the bankruptcy petition filing, Debtor owed $13,287,140.47 to BB&T on the foreclosure judgment.

According to evidence and testimony presented at the April 21, 2011 hearing, Debtor's business is not generating sufficient cash-flow to satisfy its current and future financial obligations. Debtor's Six Month Projected Cash Flow (Exhibit 8) indicates that Debtor anticipates collecting total monthly rents of between $60,000 and $61,000 over the next four months. Debtor has attempted to cut expenses, but its projections do not include necessary payments for real estate taxes, reserves, etc. Additionally, the interest on BB&T's foreclosure

judgment is approximately $60,000 per month. Mr. Asnani testified that he has no funds to inject as equity to Debtor.

Several of Debtor's current tenants have short-term leases. One of Debtor's largest tenants, the City of Palm Coast, pays approximately $20,000 per month in rent (approximately one-third of Debtor's monthly rental income), and its lease expires in October, 2011. Debtor has not secured a commitment from the City of Palm Coast concerning renewal of its lease. Several other tenants have leases that expire before the end of 2011, and still others have month-to-month leases.

Further, Debtor's unsecured, non-insider debts are relatively small in comparison to its secured debt owed to BB&T. In most instances, Debtor's unsecured debts represent rent and lease deposit amounts related to the operation of the Property. BB&T is the only creditor that has entered an appearance in this case, it was the only creditor to attend Debtors 341 meeting of creditors, and it was the only creditor to attend the April 21, 2011 hearing.

## CONCLUSIONS OF LAW

A Chapter 11 case may be dismissed for cause pursuant to Section 1112(b)(1) of the Bankruptcy Code, which provides in relevant part:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1112(b)(1). Subsection (4) of Section 1112(b) includes several examples that can constitute "cause"; however, "[i]n addition to the enumerated grounds for dismissal in Section 1112(b), a court can consider the debtor's lack of good faith in the filing of the case." In re Blunt, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999). Although there is no particular test for determining whether a debtor has filed a petition in bad faith, courts may consider factors which evidence "an

intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988) (quoting In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984)).

BB&T seeks dismissal of Asnaco's Chapter 11 case by alleging it was filed in bad faith based on the factors discussed by the Eleventh Circuit in Phoenix Piccadilly. These factors include:

(i) The Debtor only has one asset, the Property, in which it does not hold legal title;

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

(iii) The Debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

Phoenix Piccadilly, 849 F.2d at 1394-95 (citations omitted).

Although the factors listed in Phoenix Piccadilly are helpful in identifying bad faith, no single factor is dispositive. In re Harco Company of Jacksonville, LLC, 331 B.R. 453, 456 (Bankr. M.D. Fla. 2005). "[T]he court has judicial discretion to evaluate the totality of the circumstances in each case and determine whether those circumstances indicate a bad faith filing by that debtor." In re Singer Furniture Acquisition Corp., 254 B.R. 46, 51 (M.D. Fla. 2000) (citing Colonial Daytona Ltd. Partnership v. American Sav. of Florida, F.S.B., 152 B.R. 996,

1001 (M.D. Fla. 1993) ("[t]he court is given judicial discretion to determine what factors shall constitute 'cause' under the circumstances of each case.")). The Eleventh Circuit has held that the Phoenix Piccadilly factors apply to single real estate asset cases. See In re Street Safe Houses, Inc., 356 F.3d 1345, 1347 (11th Cir. 2004) ("[T]he Phoenix Piccadilly factors are appropriate guidelines for consideration when evaluating whether a Chapter 11 petition in a single asset real estate case was filed in bad faith.").

Upon a review of the evidence, the Court finds that the instant case was filed in bad faith and that cause exists to justify its dismissal pursuant to Section 1112(b)(1). While no single factor listed in Phoenix Piccadilly is dispositive, it appears all of the factors listed therein are present in this case. The Property is Debtor's sole asset, and it is encumbered by a mortgage held by BB&T. Debtor's unsecured, non-insider claims are small in comparison to BB&T's secured claim, and in most instances, represent rent and lease deposit amounts related to the operation of the Property. Mr. Asnani is Debtor's manager and sole employee. The Property is subject to a foreclosure sale as a result of Debtor's failure to make payments on the loan amount. Debtor's financial problems represent a dispute between Debtor and BB&T, which can be resolved in the state court action. In fact, the state court has already resolved the dispute as evidenced by its entering the foreclosure judgment in BB&T's favor, and subsequently denying Debtor's Motion for Stay of Execution. Finally, Debtor's filing of its bankruptcy petition on the eve of the foreclosure sale supports the conclusion that Debtor intended to delay or frustrate BB&T's efforts to enforce its rights in the Property.

The Court also finds that Debtor has no realistic possibility of an effective reorganization. Debtor's sole asset is highly overleveraged and cannot, in its present state, generate enough revenue to cover the interest payments on the loan, let alone principal payments, day-to-day

operating expenses, recurring costs, and other creditor's claims. Debtor's lack of cash and negative earnings demonstrate that Debtor does not have the ability to fund a confirmable Chapter 11 Plan.

Debtor argued at the April 21, 2011 hearing that the facts of its case closely resembled the facts in Harco Company of Jacksonville, 331 B.R. at 456, in which Judge Proctor ultimately concluded that dismissal was not warranted. However, as noted above, the Court has judicial discretion to evaluate the totality of the circumstances in each case to determine whether bad faith exists. Singer Furniture Acquisition, 254 B.R. at 51. Given the judicial discretion involved, it is unsurprising to find opinions reaching differing conclusions depending on the specific facts of each case. The Court notes that Harco Company of Jacksonville involved a debtor whose rent roll and occupancy rate had nearly doubled since the filing of its petition, and it had already filed a plan of reorganization at the time of the dismissal hearing. It is uncontroverted that neither of these facts is present in Debtor's case; thus, the Court finds that Harco Company of Jacksonville is not controlling.

## **CONCLUSION**

Debtor's case was filed in bad faith and for the purpose of hindering BB&T's efforts to enforce its rights in the Property. Accordingly, Debtor's Chapter 11 case will be dismissed pursuant to Section 1112(b)(1) of the Bankruptcy Code. The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

DATED this 10th day of June, 2011, at Jacksonville Florida.

JERRY A. FUNK
United States Bankruptcy Judge

**Copies Furnished To:**

<u>Attorneys For BB&T</u>: Jennifer L. Morando, Jason Rosenthal, The Rosenthal Law Firm, P.A., 4798 New Broad Street, Suite 130, Orlando, Florida 32814

<u>Attorney for Debtor</u>: Walter J. Snell, Snell & Snell, P.A., 436 N. Peninsula Drive, Daytona Beach, FL 32118